## CUMMINS, *Ex Parte*.

Where, after a delivery bond has been taken and forfeited, the plaintiff sues out an alias execution on his *original* judgment, and does not follow up his remedy against the property seized, this writ is a legal justification to the officer to whom it is directed, and imposes on him the duty of executing it.

If the officer fails to sell, upon such alias execution, whether on account of the interference of the plaintiff, or otherwise, he cannot proceed to sell the property on five days' notice: and if the Court below refuses an order to compel him to sell, this Court will, certainly, not compel the Court below, by mandamus, to issue a *venditioni exponas*, commanding the sheriff to sell, on five days' notice.

MOTION for a mandamus, to the Chicot Circuit Court, to compel that tribunal to order the sheriff of Chicot county to sell, upon five days'

notice, certain property of *Albert W. Webb*, on which he had levied an execution in favor of William Cummins, the relator.

From the petition and exhibits, it appeared that Cummins obtained judgment, in Chicot Circuit Court, in May, 1839, against Webb, for a debt of $150, with interest from the 1st day of December, 1837, until paid, with costs, the execution of which, by an agreement of the parties, entered of record, was to be stayed for six months; that, on the 11th day of January, A. D. 1840, Cummins sued out a writ of execution on the judgment, directed to the sheriff of Chicot county, and returnable on the 19th day of May, A. D. 1840, which came to the hands of the sheriff on the 15th January, who, on the 23d April, levied it on certain slaves of Webb, and took from Webb a bond, with security, for the forthcoming and delivery of the slaves to him, on a certain day; that the sheriff, on the return day of the execution, returned the same, together with the bond, and certified thereon that the slaves had not been delivered, nor had the debt and costs, or either of them, been paid to him, and that the bond was forfeited. The appraisement returned, fixed the value of the slaves at $3,400; that Cummins, on the 21st day of May, 1840, caused an alias writ of execution to issue on the said judgment, directed, also, to the sheriff of Chicot county, returnable on the 17th day of November, then next, which was placed in the hands of the sheriff, on the 22d day of May, and by him, on the 26th day of October, 1840, levied on certain slaves, as the property of Webb, to be sold on the 16th day of November, 1840; at which time, (according to the return of the sheriff thereon endorsed, on the 12th day of May, 1841), an arrangement was made, between the plaintiff and defendant, and the sheriff ordered, by the plaintiff, not to proceed with the sale; and, therefore, he returned the execution, with the facts thereon stated; that the following entry was made on the margin of the record of the judgment, to wit: "January term, 1841, 5th day: This day appeared, in open Court, the plaintiff in this case, and acknowledged full satisfaction of this judgment."

It also appeared, that Cummins, on the 12th day of May, 1841, moved the Circuit Court for an order to the sheriff of Chicot county, to sell the property levied on, under the alias execution, after giving five days' notice, according to the statute; and that, on the day following,

Cummins, *Ex Parte*.

he filed his own affidavit, stating that the entry of satisfaction, appearing on the record, was not his act and deed, and that the same was made without his authority, consent, or knowledge; and that the judgment had not been paid off and satisfied, and that the parties had so admitted, since the entry on the record was made; and that he believed, and did not doubt, but that the entry was made through mistake; and, thereupon, moved the Court to order the entry to be erased from the record, as not being his deed:   That the following proceedings were had, and entered on the record of the Court, on the 14th day of May, 1841, to wit: " This day came the said plaintiff, and the motion heretofore filed here, for an order to the sheriff of the county of Chicot, to proceed to sell the property levied on by virtue of the above execution in this case, upon five days' notice, having been fully heard and understood by the Court, it is the opinion of the Court, that said motion be overruled, and that said defendant recover against said plaintiff, his costs by him in and about said motion expended."

*Wm. & E. Cummins*, for the relator.

*Trapnall & Cocke*, contra.

*By the Court*, RINGO, C. J.

Upon the facts presented on this application, the petitioner insists that he is entitled to an order or writ of *venditioni exponas*, to coerce the sheriff to expose to sale the property seized by him, on and by virtue of his executions aforesaid, to satisfy said judgment against Webb; that the law regards a judgment, obtained in a Court of competent jurisdiction, as a security and obligation of the highest grade, upon which final process of execution may be obtained of right, and cannot legally be refused, so long as it does not, by testimony of equal grade, appear to have been suspended, reversed, annulled, or satisfied; that there is no other legal means of enforcing satisfaction of a judgment at law; and, therefore, as there is no legal or record evidence that the judgment in question is either suspended, reversed, annulled, or satisfied, he has a legal right to the order, or writ of execution, demanded, and is without any other adequate legal remedy to enforce the payment or satisfaction of his judgment; and, inasmuch as the Circuit

14

Court has denied to him such remedy, he is entitled to this writ, to compel that Court to grant it.

That the law considers the judgment of a Court of competent jurisdiction, as creating a security and obligation of the highest grade, must, in our opinion, be admitted; and it is equally clear, that the law has provided, that, in most, if not all cases, where judgment is obtained in the course of a common law proceeding, such obligation shall be enforced by means of some writ of execution. But this remedy, like most remedies designed to coerce the observance or performance of any legal obligation or duty, is the mere creature of law, and must, in its operation and effects, be governed by such regulations as are prescribed by law. And whenever a party resorts to it, he takes it, subject to all such legal regulations, restrictions, and limitations, as are provided for its government. Thus, such acts only as the law prescribes, can be legally done or justified under its authority; and, in every stage of the proceeding, such legal prescriptions must be observed, whether they inure to the benefit of the one party or the other, provided they neither destroy any vested right, nor impair the obligation of any contract.

In the case before us, the judgment ascertained, beyond all controversy, the fact, that Cummins was legally entitled to a certain sum of money, and that Webb was legally obliged to pay it to him; but its payment could only be coerced by means of such writ of execution as was authorized by law to issue on such judgment; and the officer, charged with the execution thereof, was bound, in the discharge of his duty, to observe, in every essential part, the provisions of law in relation thereto, and could not legally forbear the doing of any act thereby enjoined upon him, nor do any act not authorized by it; and hence, it is manifest, that this, as well as every other legal remedy, must be prosecuted in the manner and form prescribed by law. Upon such judgment, Cummins had, unquestionably, a legal right to demand, and cause to be issued, a writ of execution, against the goods and chattels, lands and tenements, of Webb, according to the provisions of the 5th, 6th, and 7th sections of the 60th chapter of the Revised Statutes. of this State, so soon as the time had expired during which the execution thereof was to be stayed by the express agreement between

Cummins, *Ex Parte.*

himself and Webb, entered of record when the judgment was obtained; and of this right he availed himself, by suing out such writ, which was placed in the hands of the proper officer, to be by him executed according to law. But other provisions of the same law secured to Webb the right of retaining in his own possession, until the day of sale, such personal property as should be seized by the officer by virtue of such writ, by giving bond in favor of Cummins, with sufficient security, to be approved by the officer, in double the value of such property, conditioned for the delivery of the property to the officer, at the time and place of sale named in such condition; and, for the purpose of ascertaining the value of such property, made it the duty of the officer to call to his assistance, at the time of making such levy, two respectable householders, to inventory and value such property, under oath, and required such inventory to be attached to, and returned with, the execution. By virtue of the execution so issued in this case, the sheriff seized certain slaves, the property of Webb, caused them to be valued, and an inventory made, as required by law, whereby the property so seized was ascertained to be of the value of $3,400, and, thereupon, Webb gave bond to Cummins, with security, approved by the sheriff, in double the amount of the value of said property, conditioned according to law, and then, availing himself of his legal right, retained the property in his own possession until the day of sale, when the same not being produced or delivered to the sheriff, according to the condition of the bond so taken therefor by him, the bond was forfeited, and the execution, together with the inventory, appraisement, and bond aforesaid, returned, with a statement of all the facts endorsed thereon by the sheriff.

What was the legal effect or consequences of these proceedings? Did they satisfy the debt to Cummins, or discharge the obligation of Webb to pay it? In our opinion they did neither. What remedy, then, was provided by law, to enforce the obligation, and coerce the payment of the debt? According to the well-established principles of the common law, the seizure, in execution, of the property of the defendant, of sufficient value to pay the demand, discharged the judgment, and extinguished the obligation of the defendant, and constituted a bar to any subsequent action or execution founded upon it;

and the plaintiff was forced to seek his remedy either against the property so seized, or the officer charged with the execution of the writ. But such, it is contended, is not the effect of a levy, under our law, where a delivery bond is given, and the possession of the property retained by the defendant. And it is urged that, in such case, the judgment creditor may, at his election, either proceed against the property seized, pursue his remedy on the bond, or have an alias execution on his judgment, without regard to the proceedings upon the first execution, or the property thereupon seized, the remedies provided by the statute being cumulative. Be this as it may, we do not consider any determination, in regard to it, necessary to a correct legal disposition of the present application, as Cummins has neither thought proper to follow up his remedy against the property seized upon the original execution, nor to resort to the delivery bond, to coerce payment of the money adjudged to him, but has voluntarily sued out an alias execution upon the judgment, as though nothing had been taken upon the original, by virtue of which, property of Webb appears to have heen taken, which, as nothing appears to the contrary, must be presumed to be of sufficient value to satisfy the demand. Now, suppose it is conceded that the alias writ irregularly or illegally issued, or both, still it would, as we apprehend, not only furnish a legal justification to the officer executing it, but would also impose that duty upon him. It was not void, and the officer could not justify any dereliction of duty, in omitting to execute its mandate according to law, by showing that it was so irregularly or illegally issued; and, thererefore, it is unnecessary to decide whether it issued regularly or irregularly, legally or illegally, as that could make no difference in regard to the question of sale; because, so long as the writ was neither superseded, nor otherwise legally avoided, the seizure under it could not, in either case, be regarded as a nullity; and, therefore, the officer, if he had not been arrested in the discharge of his duty, by the order of Cummins not to proceed with the sale, would have been bound to expose the property, so seized, to sale, in the manner prescribed by law, to satisfy said execution. But, as no delivery bond had been given and forfeited, subsequent to the last levy, he could not, upon or after a failure to sell, at the time prescribed by law, whether such failure was oc-

casioned by the interference of the plaintiff, or any other cause, proceed to sell the property on five days' notice, because it was not a case within the provisions of the statute authorizing a sale upon such notice, which only embrace cases where a delivery bond has been taken, and the condition thereof not complied with. Besides, the thirty-ninth section of the 60th chapter of the Revised Statutes, by virtue of which a sale on such notice was authorized, though in force when Cummins forbid the officer's proceeding with the sale, and ordered him to desist therefrom, had been repealed prior to the time when his motion was made to the Court for an order to the sheriff to sell the property levied on under the alias execution, after giving five days' notice; consequently, there existed no legal authority whatever, to sell the property on such notice, and the motion for such order was properly overruled. The motion was not, as it has been urged, for a *venditioni exponas*, simply commanding the officer to sell the property seized on the alias execution, and remaining in his hands unsold, and to have the money before the Court at the return thereof, to satisfy Cummins' debt, according to the legal order of the proceeding in such such case, but for an order wholly unknown to the law, and requiring him to sell the property at a time, and under circumstances, not authorized by it. Such was the motion made by the party himself; and, if he was either mistaken as to his legal rights or his remedy to enforce them, it surely was not the province of the Court, to mould his application into a different form, and grant him, thereupon, a remedy authorized by law, but which he did not seek. The duty of the Court was, to decide upon the case in the form in which it was presented by the parties themselves, and grant or refuse the remedy sought, as the law adjudged the right upon the case as presented. In this case, as before remarked, Cummins had no right to such order as, by his motion, he required the Court to make; and, of course, this Court would not be justified in compelling the inferior Court to make it.

Motion denied.